BARRY, Judge.
Plaintiff sued Sears, Roebuck and Co. (Sears) and Otis Elevator Co. (Otis) for personal injuries allegedly received on a freight elevator in Sears’ downtown store in New Orleans. The district court dismissed the lawsuit and plaintiff now appeals assigning various errors for consideration.
Plaintiff was employed as a janitorial worker for a private company. She went to the Sears building to work and was alone when she took the freight elevator to the fourth floor to sign in. She testified that the elevator was “jerking” and stopped once between floors, and when she reached the fourth floor the inner screen gate opened but the two outside doors only partially opened. Plaintiff then attempted to force open the outer doors but they suddenly closed on her right wrist. A few minutes later the outer doors opened and she went about her duties. Plaintiff testified that she told a co-worker that she hurt her hand, but did not report the incident to her supervisor nor did she report the alleged malfunctioning elevator doors. She did not seek medical attention until the following day and was subsequently paid compensation benefits for a period thereafter.[1]
The record shows this freight elevator has an inner steel mesh gate that opens upward. The mesh is too small to place a hand through. The elevator shaft on each floor of the building is closed by two metal doors which open vertically. Once inside the elevator the inner mesh gate must be fully closed before the outer metal doors start to close: to leave the elevator the mesh gate does not go up until the metal doors are open. The elevator is owned by Sears and serviced by Otis.
Plaintiff testified that she had witnessed previous problems with the opening and closing of the two metal doors. At the time of her injury she stated that the mesh gate opened first but the metal doors “... didn’t go wide enough to stick my feet in there, so I stuck my hand in there to push the door down and it clamped back on my hand.” She said she was unable to extract her hand and with her other hand punched the “open” button which released the metal doors and freed her hand.
The co-worker confirmed plaintiff told her about the accident on the evening of the occurrence and stated she (the co-worker) had to manually open the two metal doors on prior occasions.
A fellow worker testified that the metal doors do not always close completely and sometimes he had to close them with his hand.
Plaintiff’s supervisor was not told about the accident until he saw plaintiff the following day with her arm bandaged. The supervisor asked what happened and plain *1270 tiff responded that she hurt her arm on the elevator. The supervisor confirmed that no accident report was made because plaintiff did not report an accident and on the evening in question he observed plaintiff’s work and saw nothing unusual about it. The supervisor also testified if there had been a malfunction of the elevator it would have been reported to him, but he did not receive a report and to his knowledge the elevator was working at that time.
The operating superintendent of Sears testified he learned about the alleged accident approximately six days later from Sears’ insurer, but that no report had been received of any malfunction of the elevator. Sears’ chief engineer testified he had no knowledge nor report of any malfunction on the night of the alleged accident and it was a week or so before he was informed.
A maintenance examiner employed by Otis and assigned to the Sears store testified that he was not notified of any accident on the date in question.
There was testimony that the edges of the upper and lower metal doors were covered with a flat rubber material folded over which compresses when the two doors meet. The Otis maintenance examiner stated the rubber runs the length of the two edges for safety purposes, and for emphasis stated he had placed his hand between the doors during closing and did not experience pain or discomfort. He also explained that the speed of the doors is under torque control which causes the doors to slow down and close gently.
Sears’ chief engineer testified that he experimented to determine the force of the two doors on closing and a cardboard box placed between the doors was not mashed.
Plaintiff submits defendants should be held liable under strict liability, under the application of res ipsa loquitur, and because the elevator is a common carrier owing the highest duty of care. However, before exploring the application of these principles, we look to the written reasons for judgment submitted by the trial court which state:
“The court is of the opinion that plaintiff has failed to carry the burden by proving, by a preponderance of the evidence, that the accident which plaintiff claims to have caused the injuries for which she has made claim, did occur as alleged by plaintiff.”
We therefore conclude that the trier of fact did not believe plaintiff’s testimony that she sustained an accident or if there was an accident that it caused the injury for which plaintiff seeks damages.
Plaintiff was alone on the elevator and there is no witness corroboration as to what happened, if anything. The only indirect verification was supplied by the co-worker who simply stated that the plaintiff mentioned to her that she hurt her hand on the elevator. No accident report was made nor was a report concerning malfunction of the freight elevator doors.
We are impressed with the testimony of the elevator personnel from Sears and Otis which is uncontroverted that plaintiff nor anyone else reported a malfunction of the freight elevator doors on the date this alleged incident occurred. Their testimony concerning the lack of damaging impact when the outer metal doors close seriously questions the possibility of wrist damage claimed by the plaintiff. Most importantly, the testimony convinces us that the inner mesh door does not open until the outer doors open first, making it impossible for plaintiff to reach the outer doors as she claims.
In order to consider imposition of strict liability or res ipsa loquitur or any other basis for liability, plaintiff must first establish that she was injured as a result of the faulty elevator. Under Marquez v. City Stores, Inc., 371 So.2d 810 (La.1979), plaintiff need only prove “any unusual occurrence” on the elevator with resultant injury in order to impose strict liability. The district court’s reasons for judgment do not specify if plaintiff’s lawsuit was dismissed because of insufficient proof of any unusual occurrence or through disbelief that plaintiff sustained any injury on the elevator.
*1271 Even if we were to disagree with the conclusion of the trial judge the record must support on appellate review that there was manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Our responsibility is to afford great weight to the factual conclusions of the trier of fact even if there be conflict in the testimony because of the trial court’s ability to evaluate live witnesses as compared to our proverbial “cold record”. We resolve that appellant has not established manifest error in the trial court’s finding of fact.
We therefore affirm the district court’s judgment dismissing plaintiff’s lawsuit and assess all costs of this appeal to plaintiff/appellant.

AFFIRMED.

. The compensation carrier sued for reimbursement herein.